IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 18, 2026 Session

## STATE OF TENNESSEE v. JEROME NCHIYAKO DOOLEY

**Appeal from the Criminal Court for Knox County**
No. 116372   G. Scott Green, Judge

_____

### No. E2025-00399-CCA-R3-CD

_____

Defendant, Jerome Nchiyako Dooley, pled guilty to one count of sexual battery and received an agreed sentence of five years as a Range III offender, to be served on probation. Following a hearing on a warrant for violation of his probation, the trial court revoked Defendant's probation and ordered him to serve his original sentence incarcerated. Defendant appeals, arguing that the trial court erred in revoking probation based on a video Defendant posted to TikTok and that the court erred in failing to recuse itself *sua sponte*. Following a review of the entire record, the briefs and arguments of the parties, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JILL BARTEE AYERS, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J., and J. ROSS DYER, J., joined.

Jonathan P. Harwell, Knoxville, Tennessee (on appeal), and David Skidmore, Knoxville, Tennessee (at revocation hearing) for the appellant, Jerome Nchiyako Dooley.

Jonathan Skrmetti, Attorney General and Reporter; Ryan W. Davis, Assistant Attorney General; Charme Allen, District Attorney General; and Jordan Murray, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

On September 24, 2019, Defendant was charged in a presentment by a Knox County grand jury with three counts of rape of the victim, A.W.[1]  On March 3, 2023, he pled guilty pursuant to a negotiated plea agreement to one count of sexual battery to be sentenced to five years as a Range III offender, to be served on probation.  The remaining two counts were dismissed.

The facts of this case as set forth by the State at the guilty plea submission hearing are as follows:

> If this case had gone to trial, the facts, as follows, [are] that the offense occurred on July 17th of 2018.
>
> A few days prior, [A.W.] had turned 18.  She was an in-coming freshman at the University of Tennessee, and she actually joined [Tinder].  She began to communicate with [Defendant] over [Tinder].  They agreed to meet at his apartment.  It's at a Forest Avenue address in Knox County.  It's close to the - - it's close to the campus.  They had agreed to me[e]t at his residence and spend some time together.
>
> She'd made clear on her Tinder page and also in text messages or communications with [Defendant] that she didn't do - - well, how she put it was she didn't do hookups.
>
> She came over there with a pizza.  When she arrived, she went into the residence, was encouraged - - and there had been some discussion prior to her arrival about smoking marijuana, but she agreed to go into the bathroom and smoked what's called a gravity bong.  [Defendant] encouraged her to take an entire hit.
>
> After she took the hit of the marijuana from the gravity bong, she began to feel - - she essentially became incapacitated and was in and out of - - I don't know necessarily consciousness - - but she has really no recollection - - well, she has a limited recollection of what occurred.

---

[1] It is the policy of this court to refer to victims of sexual offenses by their initials.

She does recall that at some point while she was there at the residence that she was naked, that [Defendant] penetrated her vaginally while she was on her back. And, also, what's important was he penetrated her while she was on her stomach, and then she felt something warm on her back. She assumed that this was him ejaculating on her back.

At some point in time, she began to become more coherent, was able to leave. She was escorted out by [Defendant]. She then went to a - - she called her mother immediately after. Her mother told her to go to a gas station that was in the area.

At that point, they called the police. She was taken to the hospital where she was given a rape kit. They took several swabs from her.

Investigation continued. [Defendant] was interviewed some point after that. He indicated that he did not know her; that they did meet; that they did smoke marijuana, and their stories start to branch off from one another at this point. He indicated that she became intoxicated; that she was so intoxicated that he did not want to engage in any sexual behavior with her; that she attempted to engage in sexual behavior, but he indicated that he did not want to; that at some point he asked her to leave because she kept attempting to engage in sexual behavior. He indicated that their clothing never came off, that they never engaged in any sexual behavior.

Subsequent to the interview, he was asked to provide a DNA sample. He refused.

At some point in time, a search warrant was done. They gathered his DNA, tested it against the swabs that were taken from [A.W.]. And there was a swab taken from her back because she indicated that he had ejaculated on her back. And I believe he was a major - - his DNA matched as a major contributor to the sperm factor, I believe. So that would be consistent with her story and inconsistent with his story.

On April 12, 2023, a violation of probation warrant was filed alleging Defendant violated a no contact order with Yanni Gardley, a domestic violence victim in Davidson County. Following a hearing in June 2023, Defendant's probation was revoked, and he was ordered to serve one year in confinement and then returned to probation. Defendant appealed that decision, and this court affirmed the trial court's order. *State v. Jerome Nchiyako Dooley*, No. E2023-00881-CCA-R3-CD, 2023 WL 8889530 (Tenn. Crim. App. Dec. 26, 2023), *perm app. denied* (May 17, 2024).

On January 4, 2024, another violation of probation warrant was filed against Defendant alleging that since the June 2023 violation hearing, Defendant continued to contact the domestic violence victim in violation of the Davidson County no-contact order by video calls, phone calls, and emails. On April 12, 2024, an order was entered amending the violation of probation warrant alleging that Defendant had been charged with a violation of the sex offender registry for failing to update the registry within forty-eight hours of his release from incarceration on February 28, 2024. On January 13, 2025, another order was entered amending the probation violation warrant adding that Defendant had made and posted a TikTok video which included the sexual assault victim's picture and personal information stating that she falsely accused him of sexual assault and that the victim had received threatening and intimidating messages on behalf of Defendant, in violation of Rules 1 and 14 of his probation.

At the March 13, 2025 probation violation hearing, Captain Aaron Turner, assistant facility commander at the Knox County jail, testified that as part of his duties, he kept records of jail communications, including audio and video phone calls. He identified logs of phone calls from June 24, 2023, and September 22, 2023, as well as a printout of a report of video calls from September 21, 2023, all made from Defendant to Ms. Gardley. On cross-examination, Captain Turner agreed that he did not know if the calls violated any court order.

Metro Nashville Police Department Officer Juan Garcia Gonzalez testified that in April 2023, he responded to a domestic call between Ms. Gardley and Defendant. He identified Ms. Gardley and Defendant in the video call entered into evidence during Captain Turner's testimony. On cross-examination, Officer Gonzalez testified that he believed the legal matters between Ms. Gardley and Defendant were dismissed in "early 2024."

The calls and videos were played for the court. During the first call on June 24, 2023, Defendant and Ms. Gardley discussed music, and he said that things were "about to change." He noted that he had been placed in the "hole" for fighting. Defendant asserted that the judge in his case had made mistakes, and his conviction would be overturned. He also discussed filing for an appellate bond and that he had told the truth about things his prior attorney and the court system had done wrong. Defendant asserted that he would be receiving a large settlement. He also noted that he "baited" the judge in court. Defendant said his probation revocation was based on calls between himself and Ms. Gardley, even though the initial probation violation warrant was based upon an arrest. Ms. Gardley then mentioned that she had been evicted, and the call abruptly ended.

During the second phone call on September 4, 2023, Ms. Gardley told Defendant that she was glad he called her, and they discussed transcripts from his court hearing.

- 4 -

Defendant said that all his court proceedings related to contact with her and had nothing to do with his case. He also said that he thought of her daily. He admitted that his probation could be violated by again contacting her. Defendant discussed jail conditions and said that officers were threatening and assaulting him. He also asserted that a "joint" had been placed in his cell. He said that his appeal bond had been denied because he was considered a danger to her and a flight risk. Defendant and Ms. Gardley expressed regret concerning their relationship and prior difficulties. She told him to pray for them.

In a video call on September 21, 2023, Defendant discussed his legal situation and prior probation revocation with Ms. Gardley. She indicated that she had already dropped everything, but Defendant noted that his revocation was due to his contact with her from jail. Defendant discussed a potential appeal and release from confinement. He also complained about the "crooked system," conditions in the jail and again said that officers were retaliating against him, and a "joint" had been placed in his cell.

The State entered into evidence two documents from the Davidson County General Sessions Court: an order entered November 30, 2022, granting bail for abuse cases in *State of Tennessee v Jerome Dooley*, ordering Defendant to have no contact with Ms. Gardley, and an agreed order of continuance entered January 26, 2023, ordering Defendant to refrain from contact with Ms. Gardley.

Katelyn Wickson, an officer with Tennessee Department of Correction Probation and Parole supervised Defendant in "roughly December 2023." As part of her duties, she checked Defendant's compliance with the sex offender registry. In January 2024, when she determined Defendant was living with his parents in a restricted area, she told him he would have to move from that residence and instructed him to report to the office. Defendant told her "that the rules didn't apply to him." She filed a warrant alleging violation of the sex offender registry at that point. Additionally, during her supervision of Defendant, the victim of the sexual assault plea advised Officer Walters that Defendant had posted a video on a TikTok account in his name. Officer Walters found the account and the video. Defendant had not registered the TikTok account as required by the sex offender registration rules. The video was entered as an exhibit and played for the court. The video showed a screenshot of the victim's social media account, gave her name, geographic location where she lived, and her occupation. In the video, Defendant claimed he had been falsely accused by the victim. A caption on the screenshot read, "This is the girl who falsely accused me. She is the one who destroyed my life. I can't get a job, housing, or even see my family because of her and her mom []." In the video, Defendant also claimed that his trial attorney, the prosecution, and the trial judge conspired against him and that the trial judge knew the victim's family and conspired with them to get Defendant to plead guilty. Officer Walters testified that she did not believe Defendant would be successful on probation if given another opportunity.

After the parties' arguments, Defendant stated that he had "been having a very, very hard time with the probation, especially dealing with the registry." He had no place to go after leaving his parents' home and "probably shouldn't have" posted the video. He explained that he had a pending post-conviction proceeding in the sexual assault case; he maintained his innocence and hoped he could withdraw his plea and go to trial on the charges.

The trial court first noted that it did not know the victim or anyone in her family. It then stated that the most pressing comment made throughout the hearing and something the court had noted in the past, was Defendant's statement to his probation officer that "the rules just don't apply to you." The court further stated:

> I have bent over backwards to try to work with you on probation but the idea that you would post a video proclaiming your innocence and holding the victim – and she's no longer the alleged victim – you raised your right hand and told this [c]ourt under oath that you were guilty of sexual battery. That is why you are on probation right now. That is why you're on the registry right now. And unless and until this [c]ourt or some other [c]ourt says that that conviction and plea will be set aside, that is the status quo and that is where your life is right now. And the idea that you would post a video holding her up and calling her out for abuse, it just – it offends this [c]ourt to its very core.

The trial court then found that Defendant was in material violation of the terms and conditions of his probation and revoked his sentence to serve in the Department of Correction. The court said, "you have proven through your actions that you simply cannot comply with the conditions involving release within the community on probation."

Defendant's timely appeal is now before this court.

**Analysis**

Defendant argues that the trial court erred by revoking his probation on the basis of the TikTok video in which he professed his innocence, that the video did not violate any condition of probation, and that if it did constitute a violation, it was a technical violation only. Defendant also argues that the trial court erred by failing to recuse itself *sua sponte*. The State asserts that the trial court properly exercised its discretion in revoking Defendant's probation and that he is not entitled to plain error relief on his recusal issue. We agree with the State.

## I. Probation Revocation and Consequences

It is within a trial judge's discretionary authority to revoke a defendant's probation upon finding by the preponderance of the evidence that a defendant has violated the conditions of his or her probation. *See* T.C.A. § 40-35-311(d)(1); *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Harkins*, 811 S.W.2d 79, 82 (Tenn. 1991). A violation of probation need not be established beyond a reasonable doubt; instead, the proof must be sufficient to "allow[ ] the trial judge to make a conscientious and intelligent judgment." *Harkins*, 811 S.W.2d at 82.

We review the trial court's decision to revoke probation for abuse of discretion with a presumption of reasonableness "so long as the trial court places sufficient findings and the reasons for its decisions as to the revocation and the consequence on the record." *State v. Dagnan*, 641 S.W.3d 751, 759 (Tenn. 2022). When the trial court fails to place its reasons on the record, the reviewing court may either conduct a *de novo* review if the record is sufficiently developed for the court to do so or remand the case to the trial court to make findings. *Id.* (citing *State v. King*, 432 S.W.3d 316, 327-28 (Tenn. 2014)); *see also State v. Stewart*, No. M2021-00595-CCA-R3-CD, 2022 WL 1236982, at *3 (Tenn. Crim. App. Apr. 27, 2022). "In order for a reviewing court to be warranted in finding an abuse of discretion in a probation revocation case, it must be established that the record contains no substantial evidence to support the conclusion of the trial judge that a violation of the conditions of probation has occurred." *State v. Farrar*, 355 S.W.3d 582, 586 (Tenn. Crim. App. 2011) (quoting *Harkins*, 811 S.W.2d at 82); *see State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980); *see also State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010) (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)) ("A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party.").

A trial court must engage in a "two-step consideration" when determining whether to revoke a defendant's probation. *Dagnan*, 641 S.W.3d at 757. As explained by the Tennessee Supreme Court "[t]he first [step] is to determine whether to revoke probation, and the second is to determine the appropriate consequence upon revocation." *Id.* If a trial court finds by a preponderance of the evidence that a defendant violated his or her probation, then it is within the trial court's discretionary authority to revoke the defendant's probation. T.C.A. § 40-35-311(d)(1), (2); *Dagnan*, 641 S.W.3d at 756; *State v. Beard*, 189 S.W.3d 730, 734-35 (Tenn. Crim. App. 2005). Once a trial court decides to revoke a defendant's probation, it must then determine the appropriate consequences of the revocation. *Dagnan*, 641 S.W.3d at 756. The trial court may "impose one of several alternative consequences: (1) order incarceration for some period of time; (2) cause execution of the sentence as it was originally entered; (3) extend the defendant's

probationary period by up to two years; or (4) return the defendant to probation on appropriate modified conditions." *State v. Daniel*, No. M2021-01122-CCA-R3-CD, 2022 WL 6644369, at *2 (Tenn. Crim. App. Oct. 11, 2022) (quoting *Dagnan*, 641 S.W.3d at 756).

The probation statute provides for two categories of probation violations, technical and non-technical. A non-technical violation allows the trial court to revoke probation and order a defendant to serve his or her sentence when the court finds "by a preponderance of the evidence that the defendant has committed a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, or absconding." T.C.A. § 40-35-311(e)(2) (2021). Technical violations include any "act that violates the terms or conditions of probation but does not constitute a new felony, new Class A misdemeanor, zero tolerance violation as defined by the department of correction community supervision sanction matrix, or absconding." *Id.* § 40-35-311(d)(3) (2021). For a first technical violation, a trial court may (1) revoke probation and impose a term of incarceration not to exceed 15 days or (2) resentence the defendant for the remainder of the unexpired term to a probationary sentence that includes a requirement to participate in a community-based alternative to incarceration. *Id.* § 40-35-311(e) (2021).

In this case, as to the first *Dagnan* consideration, the trial court noted that it had "bent over backwards" to work with Defendant on probation, but Defendant had posted a video proclaiming his innocence after having pled guilty under oath to sexual battery. The court also pointed out that it was offended "to its very core" by the video which held up the victim and called her out for "abuse." The trial court further said that Defendant had "proven through [his] actions that [he] simply cannot comply with the conditions involving release within the community on probation." A trial court's findings do not have to be "particularly lengthy or detailed but only sufficient for the appellate courts to conduct a meaningful review of the revocation decision." *Dagnan*, 641 S.W.3d at 759. Furthermore, a trial court is not required to "include specific phraseology in its ruling." *State v. Doxtater*, No. E2023-00261-CCA-R3-CD, 2023 WL 8319200, at *6 (Tenn. Crim. App. Dec. 1, 2023), *no perm. app. filed*. Although the trial court's findings were not particularly detailed, they were sufficient for this court to conduct a meaningful review, and the record supports the trial court's findings.

Additionally, a de novo review of the record further supports a finding that Defendant violated the terms of his probation. The proof presented by the State at the probation revocation hearing shows that Defendant violated Rules 1 and 14 of the rules of probation by violating the sex offender registry and engaging in assaultive, abusive, and threatening or intimidating behavior toward the victim in this case. He also violated the conditions of his probation by violating a no contact order with Ms. Gardley, the victim in

his domestic violence case, on three different occasions, which was proven by the admission of two phone calls and one video call between Defendant and Ms. Gardley while he was incarcerated after his first probation violation in this case. Defendant's probation in this case had already been revoked once for contact with Ms. Gardley; yet, he continued contacting her. Defendant admitted during one of the calls that his probation could again be violated for contacting her.

The proof shows that Defendant violated the sex offender registry by living with his parents in Nashville in a restricted zone due to its proximity to a park. He was instructed to move and report to the probation office, but he responded by stating that the sex offender residential restriction requirements did not apply to him. The sex offender registry rules also mandated that Defendant register any social media accounts. However, Defendant had an unregistered TikTok account which he used to post the video claiming that the victim had falsely accused him and destroyed his life. Defendant also included a screenshot of the victim's private Instagram account and published a photograph of her as well as her personal information. Defendant then included screenshots of a Title IX investigation report, a Tennessee Bureau of Investigation forensic biology report, and the victim's rape kit results to support his allegation that he did not assault the victim. Contrary to Defendant's assertions, his creation of and posting of the video on TikTok was in violation of the terms of his probation and went well beyond simply proclaiming his innocence in a case in which he had already entered a plea under oath admitting his guilt.

Moving to the second prong of *Dagnan*, the trial court revoked Defendant's probation and ordered him to serve his sentence in the Department of Correction stating, "You have proven through your actions that you simply cannot comply with the conditions involving release into the community on probation." The trial court had also expressed concern over Defendant's statement to his probation officer that "the rules just don't apply to [him]." While the trial court's findings concerning the second prong of *Dagnan* are sparse, they are sufficient for appellate review and support the trial court's decision to revoke Defendant's probation based on Defendant's repeated disregard of the rules of probation and orders of the trial court.

Although, as argued by Defendant, the trial court did not consider whether Defendant committed a technical or non-technical violation, a de novo review reflects multiple non-technical violations. The proof showed by a preponderance of the evidence that Defendant violated the rules of the sex offender registry, which is a Class E felony offense. *See* T.C.A. § 40-39-208(b) (providing that sex offender registry violations are Class E felonies). Moreover, Defendant contacted Ms. Gardley, the victim in his domestic violence case, in violation of a condition of his probation. *See* § 40-35-311(e)(2) (Providing that "contacting the defendant's victim in violation of a condition of probation" is a non-technical violation allowing for full revocation). As pointed out by the State, after

Defendant's first revocation hearing in this case, the trial court ordered: "A further condition of your probation will be so that there is no misunderstanding that you are to have no contact with the victim in this case, nor with Ms. Gardley." Defendant contacted Ms. Gardley several times during his incarceration, in clear violation of the conditions of his probation.

Regardless of whether Defendant's violations in this case were technical or non-technical violations, it is clear from the record that revocation of his probation was appropriate. This is Defendant's second probation revocation. His first probation violation also involved prohibited contact with Ms. Gardley, and this revocation proceeding involved additional violations. When considering the consequence of a revocation of probation, a trial court may consider "the number of revocations, the seriousness of the violation, the defendant's criminal history, and the defendant's character." *Dagnan*, 641 S.W.3d at 759 n.5. "[A]n accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." *State v. Jones*, No. E2023-00155-CCA-R3-CD, 2023 WL 6389810, at *3 (Tenn. Crim. App. Sept. 29, 2023) (quoting *State v. Shelton*, No. E2022-00875-CCA-R3-CD, 2023 WL 2261081, at *3 (Tenn. Crim. App. Feb. 28, 2023)), *no perm. app. filed*; *State v. Warfield*, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. Feb. 10, 1999); *see State v. Brumfield*, No. M2015-01940-CCA-R3-CD, 2016 WL 4251178, at *3 (Tenn. Crim. App. Aug. 10, 2016); *see also State v. Johnson*, No. M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. Feb. 11, 2002). In this case, Defendant's "frequent and recent inability to successfully complete probation supports the trial court's imposition of the original sentence." *State v. Smith*, No. W2025-00546-CCA-R3-CD, 2026 WL 789061, at *6 (Tenn. Crim. App. Mar. 20, 2026), *no perm. app. yet filed*.

Based on the record, we conclude that the trial court did not abuse its discretion in finding Defendant in violation of his probationary sentence nor in ordering him to serve the balance of his sentence in confinement. Defendant is not entitled to relief.

## II. Recusal

A defendant facing revocation of probation is entitled to certain due process protections, including a hearing before a neutral and detached magistrate. *See Gagnon v. Scarpelli*, 411 U.S. 778,786 (1973). "A judge should grant a motion to recuse when the judge has any doubt as to his or her ability to preside impartially in the case or when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality." *Smith v. State*, 357 S.W.3d 322, 341 (Tenn. 2011) (internal quotation omitted). Whether a judge should recuse himself or herself from a legal proceeding rests within the sound discretion

of the judge and will not be reversed on appeal "unless clear abuse appears on the face of the record." *State v. Reid*, 213 S.W.3d 792, 815 (Tenn. 2006).

In this case, Defendant argues that the trial court should have recused itself *sua sponte* because Defendant criticized the court in the TikTok video he posted. It is undisputed that Defendant did not file a recusal motion, and we agree with the State that Defendant has waived consideration of this issue by failing to follow the procedural requirements of a motion to recuse. *See* Tenn. Sup. Ct. R. 10B; *see also* Tenn. R. App. P. 36(a) (stating that relief is not available "to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error"). Tennessee Supreme Court Rule 10B states:

> Any party seeking disqualification, recusal, or a determination of constitutional or statutory incompetence of a judge of a court of record, or a judge acting as a court of record, shall do so by a timely filed written motion. . . . The motion shall state, with specificity, all factual or legal grounds supporting disqualification of the judge and shall affirmatively state that it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Tenn. Sup. Ct. R. 10B, § 1.01. A motion to recuse "must be filed promptly after the facts forming the basis for the motion become known . . . and the failure to seek recusal in a timely manner results in a waiver of a party's right to question a judge's impartiality." *Lofton v. Lofton*, 345 S.W.3d 913, 917 (Tenn. Ct. App. 2008) (internal quotation omitted). Our "[c]ourts frown upon the manipulation of the impartiality issue to gain procedural advantage and will not permit litigants to refrain from asserting known grounds for disqualification in order 'to experiment with the court . . . and raise the objection later when the result of the trial is unfavorable.'" *Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998) (quoting *Holmes v. Eason*, 76 Tenn. 754, 757 (1882)).

Defendant requests that we consider this issue under plain error. In order for us to find plain error: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'" *State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). The presence of all five factors must be established by the record before we will recognize the existence of plain error, and complete consideration of all the factors is not necessary when it is clear from the record that at least one factor cannot be established. *Id.* at 283.

Defendant cannot show that the trial court breached an unequivocal rule of law or that relief is necessary to do substantial justice. There is no rule of law requiring a trial judge to recuse himself because of public criticism by a defendant.[2] The trial court addressed the TikTok video and denied any personal knowledge of or relationship with the victim or her family. There was nothing in the court's statements or rulings in the revocation proceedings to show that the trial court was biased based on Defendant's allegations against the judge in the video. *See State v. Clark*, 610 S.W.3d 739, 744 (Tenn. 2020) ("Bases for which a judge's impartiality might reasonably be questioned include . . . when the judge has a personal bias or prejudice against any of the parties[.]"). Moreover, there is nothing in the record to show that the result of the proceeding would have been any different had the trial judge recused himself. The proof instead shows that Defendant clearly violated the conditions of his probation. Accordingly, we conclude that there is no plain error in this case.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

s/*Jill Bartee Ayers*
JILL BARTEE AYERS, JUDGE

---

[2] We note that even in cases where a defendant filed a lawsuit against the trial judge or filed a grievance against the trial judge with the Court of the Judiciary and the Tennessee Supreme Court, recusal was not mandated. *Armstrong v. State*, No. M2016-02539-CCA-R3-PC, 2017 WL 4315376, at *4 (Tenn. Crim. App. Sept. 27, 2017) (citations omitted).